# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| DON PICHE, JR., on behalf of himself and all others similarly situated,<br><br>   Plaintiff,<br><br>vs.<br><br>CHEX SYSTEMS, INC.,<br><br>   Defendant. | CIVIL ACTION NO.<br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## NATURE OF THE CASE

1. This is a putative class action on behalf of Don Piche, Jr. ("Piche") and a class of all others similarly situated against Chex Systems, Inc. ("Chex"), a consumer reporting agency that provides specialized account information concerning the personal banking history of consumers.

2. Chex provides consumer reporting services to an estimated 9,000 banking institutions doing business at approximately 100,000 bank branch locations within the United States. Approximately 80% of bank branches employ Chex's services to screen applicants for checking and savings accounts.[1]

3. Chex's services include identity verification, transaction monitoring, risk scoring and reports on account history.

---

[1] *From the Margins to the Mainstream: A Guide to Building Products and Strategies for Underbanked Markets*, National Community Investment Fund, 2008.

4. Chex offers products such as QualiFile Deposit Account Risk Scoring Solution, which is designed to evaluate the risk of the deposit account applicants.

5. Thousands of Chex network members rely on QualiFile to automatically score demand deposit accounts.

6. Chex's reports include information concerning check overdrafts, unsettled balances, account closures, depositing fraudulent checks, and suspicious account handling.

7. Chex systematically labels Piche and the Class members as fraud suspects without any proof, effectively blackballing them from access to conventional banking services.

8. Chex regularly refuses to adhere to its obligations under the Fair Credit Reporting Act ("FCRA") to conduct an independent investigation into these charges of fraud, and instead permits unverified and unverifiable information to remain on Plaintiff's and the Class members' consumer reports.

9. Chex reports only derogatory information. For example, Chex does not report any positive banking relationship, thus rendering reports facially incomplete and leaving out any possibility for a bank to consider the negative item an outlier.

10. Chex reports derogatory information by institution, leaving the user to consider one negative incident with one institution without disclosing possibly several positive and existing relationships with numerous other institutions.

11. Chex's reports identify: (1) the name of the Financial Institution; (2) the date the account was closed; (3) whether any money was owed; and (4) a generic code such as "suspected fraud activity," or "account abuse," etc.

12. Chex does not provide consumers or users with objective criteria for its subjective characterizations of account statuses such as "suspected fraud activity" or "account abuse."

13. Neither the banks nor the reporting and screening agencies have standardized industry-wide definitions of "account abuse" or "suspected fraud activity," nor have they standardized how or when the activity is reported.

14. The consequences of being in the Chex database amount to disproportionate punishment for consumers who have simply made a mistake, facing the same penalties as those who intentionally perpetuated a fraud: account closure and revocation of banking privileges for five years.

15. When Chex codes a consumer's report with "suspected fraud activity," even for outstanding overdraft fees or account delinquencies, it maintains the "suspected fraud activity" code on that consumer's report for five years, even if the money owed is repaid.

16. Many Chex customers – banks – will refuse to open accounts for individuals who appear in the Chex database with a suspected fraud notation.

17. Banks that consider maintaining bank accounts for individuals whose Chex reports include negative codes establish "second chance accounts" for those consumers.

18. Second chance accounts are opened at the expense of the consumer via fees and include restricted access features such as banning debit card privileges or reduced ATM daily withdrawal limits.

19. Consumers are often required to participate in a financial management workshop before they can open a second chance account.

20. Many consumers who repay the overdraft and even secure a letter from the Bank validating the repayment still cannot secure a bank account or even a second chance account due to the Chex report.

21. Consumer activity associated with a "fraud" code forecloses a consumer from opening a bank account for five years; even foreclosing the opportunity for a second chance account.

22. Credit bureaus report both negative and positive information about consumers; a ChexSystems report discloses only negative information, if any, about a consumer's use of deposit accounts. *What is ChexSystems?* (https://www.thebalance.com/what-is-chexsystems-2386130).

23. The Greenlining Institute, a public policy center headquartered in San Francisco, has published a 2000 bank survey indicating wide disparities in the criteria banks have used when deciding whether to report negatives items to ChexSystems. *From*

*the Margins to the Mainstream: A Guide to Building Products and Strategies for Underbanked Markets*, National Community Investment Fund, 2008.

24. Low-income individuals, because they are more susceptible to overdrawing their accounts, typically find themselves the victims of ChexSystems' reports. *Why a guy making $100,000 a year can't get a bank account*, The Washington Post, June 19, 2014.

25. *Millions* of people are blocked from opening accounts annually due to Chex's rating of their banking activity. *Bank customers – you're being tracked* (http://www.money.cnn.com/2012/08/16/pf/bank-account-history/index.html).

## JURISDICTION

26. Piche brings this lawsuit on behalf of himself and others similarly situated under the FCRA, 15 U.S.C. § 1681 *et seq.*

27. This Court's jurisdiction arises under 15 U.S.C. § 1681p and 28 U.S.C. §§ 1331 and 1337.

28. Venue is proper under 28 U.S.C. § 1391(b)(2) and (b)(3), because Chex is a foreign corporation with its main business operations located in Minnesota. Chex prepared the consumer reports at issue using its computer systems in Minnesota, and consequently the events underlying this complaint occurred in Minnesota and this Court has specific jurisdiction over the claims that arose within this District.

## PARTIES

29. Piche resides in Milford, CT.

5

30. Piche is a "consumer" as defined in the FCRA, 15 U.S.C. § 1681a(c).

31. Chex is a Minnesota corporation headquartered in Woodbury, Minnesota. Chex is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS RELATIVE TO THE CHEX SYSTEMS CREDIT REPORT

32. On October 13, 2015, Piche went to Bank of America to open two bank accounts.

33. Bank of America pulled a Chex report on Piche and notified him that the Chex Report contained a "Suspected Fraud Activity" alert.

34. Based on the alert, Bank of America declined to open accounts for Piche.

35. That same day, Piche opened two bank accounts with the People's United Bank.

36. On October 13, 2015, the People's United Bank issued a welcome letter to Piche.

37. Also on October 13, 2015, the People's United Bank requested and obtained a Chex report and a QualiFile Score for Piche.

38. Based on the Chex report, People's United Bank issued a Notice of Adverse Action and terminated Piche's accounts.

39. Piche obtained a copy of the QualiFile Score and Chex report, which provided the following:

    a. Inquiry Date: 10/13/2015

      b.      Account Action: Decline

      c.      Recommended Action: Provide Adverse Action Form Check Box for Chex Systems

      d.      Closure Reasons: 1. Suspected Fraud Activity

      e.      Category: Suspected Fraud Activity

40. On November 22, 2015, Piche secured a Chex disclosure, which provided the following:

      a.      Reported for: SUSPECTED FRAUD ACTIVITY

      b.      ANY AMOUNTS OWED HAVE BEEN PAID

      c.      Original Charge Off Amount: $261.54

      d.      Closure Status: PAID IN FULL

41. The Chex disclosure also contained an inquiry log, disclosing that People's United Bank inquired on: 10/13/2015; 11/03/2015; 11/05/2015; 11/06/2015 and 11/07/2015.

42. On or around October 29, 2015, Piche attempted to open bank accounts with First Niagara Bank.

43. First Niagara Bank, through its representative Bob Anderson, advised Piche that he could not open an account because there was still a "Suspected Fraud Activity" code appearing on his Chex report.

44. Mr. Anderson went on to explain that because of the "Suspected Fraud

Activity" code on Piche's Chex report, there would be no discretion to allow for opening the accounts.

45. Piche then attempted to open accounts with Bankwell.

46. Similarly, Bankwell refused to open accounts for Mr. Piche because of the "Suspected Fraud Activity" code on his Chex Report.

## PROCEDURES PRACTICES AND POLICIES OF CHEX SYSTEMS

47. Chex regularly provides reports comprised of specialized account data concerning the personal banking history of consumers.

48. Those reports constitute consumer reports for purposes of the FCRA, 15 U.S.C. 1681a.

49. Chex has implemented uniform procedures, policies, and practices used in preparing and delivering those consumer reports.

50. Those procedures, policies, and practices dictate the means by which reports will be assembled, and the means by which they are delivered to persons outside its own organization.

51. Those policies, procedures, and practices provide for reporting of suspected fraud activity without any provision to verify the fraud.

52. Chex fails to request sufficient information to correctly discern whether the subject of a consumer report has committed "fraud activity."

53. Chex fails to use all information provided to it for the purpose of discerning

whether a consumer has committed "fraud activity."

54. Chex fails to promulgate objective standards dictating what consumer bank account activity qualifies as "fraud activity."

55. Chex fails to promulgate objective standards to discern whether the activity reported by its furnishers regarding a certain consumer's activity is "fraud activity."

56. Chex fails to establish the standard of review it will employ to determine whether the activity a furnisher is reporting should be reported as "fraud activity."

57. Chex fails to identify the supporting documentation necessary to justify a furnisher's classification of consumer bank activity as "fraud activity."

58. Chex fails to maintain any policies, procedures or practices to determine instances where "fraud activity" has occurred.

59. Chex fails to maintain any policies, procedures or practices requiring its furnishers to confirm or verify instances of "fraud activity."

60. Ultimately, when preparing consumer reports Chex fails to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individuals about whom the reports relate in violation of the FCRA.

## CLASS ALLEGATIONS

61. Chex has published consumer reports containing false and inherently unverifiable information concerning Piche and the putative Class members.

62. Chex fails to regularly update where industry standards within the credit

reporting industry would ordinarily require monthly updates.

63. In the absence of any appropriate policies, procedures and practices to verify or confirm instances of "fraud activity," Chex cannot follow reasonable procedures to ensure "maximum possible accuracy" as required by 15 U.S.C. § 1681e(b).

64. Chex knew or should have known about its legal obligations under 15 U.S.C. § 1681e(b). Congress established these obligations over 30 years ago. Since that time, the Federal Trade Commission has promulgated commentary and opinion letters concerning these provisions, and district courts throughout the country have issued opinions concerning these provisions. The law in this area is neither obtuse nor obscure.

65. Chex obtained or had available substantial written materials that apprised them of their duties under the FCRA in the form of case law, Federal Regulations and opinions from the FTC.

66. Despite knowing of these legal obligations, Chex acted consciously in breaching its known duties and deprived Piche and other members of the Class of their rights under the FCRA.

67. Chex consistently acted in a systematic fashion indicative of an entity that acted in conformity with established policies, procedures and practices which violated the FCRA, in spite of being aware of the provisions to the contrary.

68. Chex has failed to follow reasonable procedures to ensure the maximum possible accuracy of the reports it prepares or issues in violation of 15 U.S.C. § 1681e(b).

69. Chex has engaged in this conduct in relation to a large number of persons; consequently the prospective classes meet the "numerosity" requirements of a class action under Rule 23.

70. This action is brought as a class action on behalf of the Reasonable Procedures Class.

71. The Reasonable Procedures Class consists of all natural persons residing in the United States (including all territories and other political subdivisions of the United States): (a) who were the subject of a report sold by Chex Systems to a third party; (b) that was furnished to a user of Chex Systems; (c) that contained a negative account rating of "suspected fraud activity;" (d) within five years next preceding the filing of this action and during its pendency. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

72. Class counsel will likely obtain the names and addresses of the putative Class members through electronic records maintained by Chex; consequently the parties and the Court can identify the prospective Class members.

73. Piche asserts claims under the same legal and remedial theories as those of the prospective class members; consequently, this case meets the "typicality" requirements of a class action under Rule 23.

74. Piche's case presents a number of issues common to those of the Class

members:

    a. Whether Chex follows reasonable procedures to ensure the maximum possible accuracy of the consumer reports it prepares or issues.

    b. Whether Chex follows uniform policies, procedures and practices to comply with the provisions of 15 U.S.C. § 1681e.

    c. Whether Chex's conduct constituted violations of the FCRA.

    d. Whether Chex knowingly and intentionally committed an act in conscious disregard of the rights of the consumer.

    e. Whether Chex negligently committed an act in failing to comply with the FCRA.

75. These common issues of law and fact predominate over any questions affecting an individual member; consequently this case meets the "commonality" and "predominance" requirements for class actions under Rule 23.

76. Piche will fairly and adequately represent the interests of the putative Class.

77. Because he has asserted the same types of claims as those of the Class members, Piche's interests coincide with those of the putative Class members he seeks to represent.

78. Piche has retained competent and experienced counsel in such litigation; consequently, Piche is an "adequate" class representative under Rule 23.

79. The damages suffered by each prospective class member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Chex Systems' conduct.

80. The class action mechanism is "superior" to other available methods for fair and efficient adjudication of the controversy under Rule 23.

   a. Individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Chex Systems' conduct.

   b. The class action mechanism will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

   c. The prospective class members would find it virtually impossible to individually and effectively redress the wrongs done to them due to the high cost of independent litigation and low rate of return typical of a consumer reporting case.

81. Consumer reporting cases involving consumer reports rarely present large damages which would ordinarily attract competent counsel.

82. The cost of litigating fair credit cases within the federal court system would deter many Plaintiffs' attorneys from assuming the representation of the prospective class members in an individual case in light of the small potential recovery.

83. Few attorneys are qualified to identify, let alone litigate, consumer reporting cases involving access and use of consumer reports.

84. While cases like these do present the possibility of statutory fee awards, those fee awards only arise in the event of a successful "actual damage" suit or a finding of willfulness. These heightened burdens of proof for successful recoveries frequently impair the ability of consumers to find representation for consumer reporting cases.

85. Even if the members of the putative Class could afford such individual litigation and find competent counsel, the number of suits which would be necessary to remedy the wrongs in this case would represent an unnecessary burden on the Court.

86. Individualized litigation by these Class members would also present the potential for inconsistent or contradictory judgments and increased delay and expense to all parties and to the court system.

## **COUNT I – FCRA, 15 U.S.C. § 1681 *et seq*. (CHEXSYSTEMS)**

87. Piche incorporates the preceding allegations by reference.

88. Chex prepared one or more consumer reports relating to Piche and members of the putative Class.

89. Those consumer reports contained inaccurate information.

90. Chex failed to follow reasonable procedures to ensure maximum possible accuracy of the information contained within those reports concerning Piche and the putative Class members by publishing inherently unreliable information.

91. Chex failed to update its reports and published otherwise obsolete information.

92. Chex violated the FCRA, 15 U.S.C. § 1681e(b).

93. Chex's violations of the FCRA were negligent and caused harm to Piche in violation of 15 U.S.C. §§ 1681e(b) and 1681o; alternatively Chex's violations of the FCRA were willful in violation of 15 U.S.C. §§ 1681e(b) and 1681(n).

94. As a result of these violations, Piche and the putative Class members have suffered damages including, but not limited to, loss of credit, closure of bank accounts, inability to open bank accounts, and interference with existing and prospective banking relationships. In addition, Plaintiff and the putative Class members suffered emotional distress, including anxiety, frustration, embarrassment, and humiliation.

## **PRAYER FOR RELIEF**

WHEREFORE, Piche prays that this case be certified and maintained as a class action and for judgment to be entered upon Defendant as follows:

    a. for actual economic and compensatory damages on behalf of Piche and all members of the Class;

    b. for statutory damages in an amount to be determined at trial;

    c. for punitive damages in an amount to be determined at trial.

    d. for reasonable attorney fees and reimbursement of all costs for the prosecution of this action;

    e. for declaratory and injunctive relief as appropriate; and

      f.     any other relief the Court deems just.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 26, 2017

Respectfully submitted by:

*/s/ Melissa S. Weiner*
MN Bar No. 387900
Clayton D. Halunen
MN Bar No. 219721
Christopher J. Moreland
MN Bar No. 3279142
HALUNEN LAW
1650 IDS Center
80 S Eighth St.
Minneapolis MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
weiner@halunenlaw.com
halunen@halunenlaw.com
moreland@halunenlaw.com

Sylvia S. Bolos (P78715)
Ian B. Lyngklip (P47173)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
Telephone: (612) 260-5383
SylviaB@MichiganConsumerLaw.com
Ian@MichiganConsumerLaw.com

*Attorneys for Plaintiff*